**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GAYLE D. BROWN, | |
| Plaintiff, | Civil Action No. 14-1457 (JMC) |
| v. | |
| DENIS R. MCDONOUGH, *in his official capacity as Secretary of Veterans Affairs*, | |
| Defendant. | |

**<u>MEMORANDUM OPINION</u>[1]**

Gayle Brown, an employee of the Department of Veterans Affairs (VA), has made multiple claims of discrimination against her employer under Title VII, the Americans with Disabilities Act (ADA), the Rehabilitation Act, the Age Discrimination in Employment Act (ADEA),[2] and the Notification of Federal Employees Antidiscrimination and Retaliation Act (No Fear Act). Defendant filed a Motion to Dismiss most of Ms. Brown's claims, ECF 21,[3] and later filed a Motion for Judgment on the Pleadings as to the rest, ECF 57. The Court grants Defendant's motions to dismiss all Ms. Brown's claims except for one—that Defendant intentionally

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] Ms. Brown does not cite to the ADEA in her Amended Complaint, but instead appears to advance an age discrimination claim under Title VII. *See generally* ECF 15. Because the ADEA is the proper vehicle for such a claim, the Court construes the Complaint to include a claim under that statute.

[3] Defendant also moved, "in the alternative," for summary judgment as to some of Ms. Brown's claims. ECF 21 at 1. The Court declines to treat the motion as a motion for summary judgment, and therefore considers only the allegations included in (or incorporated by) the Amended Complaint. *See López Bello v. Smith*, No. 21-cv-1727 (RBW), 2022 WL 17830226, at *4 (D.D.C. Dec. 21, 2022) (citing *Ruffin v. Gray*, 443 F. App'x 562, 563 (D.C. Cir. 2011)).

discriminated against Ms. Brown on the basis of age and sex when it allegedly reassigned her fleet management duties to a younger, male analyst in May 2014.

## I.     BACKGROUND

Ms. Brown, who is an African-American woman and who was more than forty years old during the events that are relevant to this case, filed four Equal Employment Opportunity (EEO) complaints between 2009 and 2014 alleging discrimination. Those complaints, which form the basis for this action, are incorporated into her Amended Complaint by reference. *See generally* ECF 15. The Court will begin by summarizing the allegations in each of Ms. Brown's EEO complaints, along with their procedural histories.

### A.  First EEO Complaint

Ms. Brown, a long-time employee at the VA, filed her first EEO complaint in August 2009. ECF 21-1 at 7 (EEO Complaint). In that complaint, she alleged that she was discriminated against on the basis of race, gender, and age when she was not selected for the position of Supervisory Program Analyst, for which she interviewed in March 2009. *Id*. at 7, 9, 11. Ms. Brown alleged that her management experience far outweighed that of the white male employee who was selected, *id*. at 9–10, and that the stated rationale for the decision to hire that candidate (that he "had a vision") was transparently pretextual, *id*. at 11. Ms. Brown's claim was denied by the VA, and she petitioned the EEOC for a hearing. *Id*. at 12 (EEOC Decision).

An EEOC administrative judge ruled that, though Ms. Brown was qualified for the position, she had failed to "establish that she was subjected to discrimination on the bases of race, sex or age." *Id*. at 12. On October 19, 2011, the EEOC issued an order informing Ms. Brown that she had the right to file a civil action "within ninety (90) calendar days from the date that you receive this decision." *Id*. at 14. On January 18, 2012, Ms. Brown attempted to file a complaint in this Court concerning her nonselection, ECF 1 at 25, together with a letter requesting to proceed

*in forma pauperis*, *id*. at 24.  Defendant appears to concede that a complaint filed on that day could have been found timely, given that there is no record of when Ms. Brown received notice of the EEOC decision. *See* ECF 58 at 25. However, Ms. Brown's draft complaint was returned to her unfiled, along with instructions on how to correctly apply to proceed *in forma pauperis*. ECF 1 at 23. Ms. Brown did not file a new complaint concerning the 2009 nonselection until more than two years later, in August 2014. ECF 1.

### B.  Second EEO Complaint

Ms. Brown filed a second EEO complaint in December 2009, claiming discrimination and hostile work environment based on race, sex, age, disability,[4] and reprisal. ECF 21-1 at 15 (EEO Complaint). Ms. Brown alleged the following discrete acts of discrimination, which occurred between May and November 2009: she was denied a reasonable accommodation when three requests for advance sick leave were denied; she was given unreasonable work assignments and deadlines; she was treated unprofessionally in front of her colleagues and was required to affirmatively account for her productivity in ways her coworkers were not; she was twice denied overtime and compensatory time; and she was wrongly denied an extension of time to complete a training task. *See id*. at 17, 23. Ms. Brown's second EEO complaint, like her first, was denied by the VA, and she petitioned the EEOC for a hearing. *See id*. at 21 (Final Agency Decision). That request for a hearing was denied by an administrative judge as untimely. *See id.*

---

[4] In the proceedings adjudicating her second EEO complaint, Ms. Brown represented that her "disability consists of injuries to her right hand, wrist, arm and right knee," sustained when she fell at work in 1998, the symptoms of which worsened in January 2009. ECF 21-1 at 24. Later, Ms. Brown would also allege that she was diagnosed with carpal tunnel syndrome and lower disc syndrome, which "affect her abilities to perform her duties at work for extended periods of time, such as typing, bending, filing and reaching." *Id*. at 67.

On February 28, 2012—more than a month after Ms. Brown's would-be complaint based on her first EEO complaint was returned to her unfiled, *see* ECF 1 at 23—the VA issued a Final Agency Decision as to her second EEO complaint, concluding that "[t]he weight of the evidence shows that the complainant was not discriminated against as alleged." ECF 21-1 at 39. That decision instructed Ms. Brown that she had "the right to file a civil action in an appropriate United States District Court . . . within 90 days of receipt of this final decision." *Id.* at 44. Ms. Brown did not file a civil complaint concerning the allegations in her second EEO complaint until August 2014. ECF 1.

### C.  Third EEO Complaint

Ms. Brown's third EEO complaint was filed in December 2010. ECF 21-1 at 46 (EEO Complaint). In that complaint, Ms. Brown once again made claims of discrimination and hostile work environment based on race, sex, age, disability, and reprisal. *Id.* at 48. The complaint included a new nonselection claim, as Ms. Brown had once again applied for the position of Supervisory Program Analyst, only to be passed over in favor of a Black male candidate who Ms. Brown alleges was less qualified than her. *Id.* at 69 (Final Agency Decision). Ms. Brown also claimed discrimination based on a lower-than-deserved performance rating she had received in 2010, *id.* at 58 (no. 11), and a series of incidents involving a single supervisor from August through October of 2010, *compare id.* at 57–58 (nos. 1, 5–10, 12, 13), *with* ECF 15 ¶¶ 39, 41–46, 48, 49, 52–54. Those incidents included Ms. Brown being admonished in front of her colleagues, denied medical leave on multiple occasions, interrupted during a telephone conversation to be given a work-related task, and charged with several hours' time of AWOL for her disability related absences. ECF 21-1 at 57–58. The VA issued a Final Agency Decision denying her claims. ECF 21-1 at 73 n.1. Ms. Brown's appeal of that decision was denied on May 22, 2014. *Id.* at 73, 76.

That denial instructed Ms. Brown that she had ninety days to file a civil action. *Id.* at 75. Ms. Brown filed this case eighty-nine days later, on August 25, 2014. ECF 1.

On the same day as she filed her appeal of the VA's adverse decision, Ms. Brown also filed a petition for Chapter 13 bankruptcy. *See* ECF 21-1 at 73; Bankr. Petition 12-bk-221 (D.D.C.), ECF 1.[5] Ms. Brown's bankruptcy case is relevant here because at no point during that proceeding did she disclose her third EEO complaint or the discrimination claims underlying that complaint. *See generally* Bankr. Petition. Ms. Brown did not list her administrative claims as a contingent or unliquidated asset in her bankruptcy petition. *See* Bankr. Petition, ECF 1 at 10. Nor did she list the claims in her Statement of Financial Affairs, which required her to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." *See id.* at 28. Ms. Brown also failed to disclose her discrimination claims later in the bankruptcy proceedings, when she amended her petition to list a pending workman's compensation claim as a contingent asset, Bankr. Petition, ECF 27 at 5—a step she took after the Trustee moved to dismiss her case for failure to disclose that claim, Bankr. Petition, ECF 22. Ms. Brown's bankruptcy plan was confirmed on June 22, 2012, Bankr. Petition, ECF 36, and her debt was discharged on November 24, 2015, Bankr. Petition, ECF 112.

### D. Fourth EEO Complaint

On June 27, 2014, Ms. Brown initiated contact with an EEO officer regarding the allegations underlying her fourth and final EEO complaint. ECF 58-2 at 7 (Final Agency Decision). She subsequently filed a formal EEO complaint alleging discrimination and hostile work environment based on sex, age, and reprisal. *Id.* at 7–8. In her fourth complaint, Ms. Brown

---

[5] Courts in this jurisdiction may take judicial notice of the filings, orders, and dockets of bankruptcy cases. *See Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 38 n.2 (D.D.C. 2022).

alleged two (timely) discrete acts of discrimination.[6] The first was her employer's decision to reassign her fleet management duties and responsibilities to a younger, male analyst, whose position was subsequently upgraded from GS-11 to GS-13. *Id*. at 7, 12. The second was a one-day suspension Ms. Brown received in April 2015 due to alleged disruptive conduct and failure to carry out an order from her supervisor. *Id*. at 8. In the administrative proceedings adjudicating her claims, Ms. Brown's second-line supervisor stated that her suspension was based on the results of a "fact-finding inquiry" conducted after Ms. Brown had been involved in two altercations with a male co-worker. *Id*. at 13, 14.

Ms. Brown's hostile work environment claim referenced eleven incidents dating back to 2011. *Id*. at 8. Those incidents included: "complaints regarding her performance ratings, a delay in issuing new performance standards, re-assigning of her mail management duties, being given a short turnaround time on work assignments, being told that any employee would be charged with AWOL if they were away from their workstations for 15 minutes or more (including going to the restroom) and being charged with AWOL." *Id*. at 15. As for evidence that those incidents were discriminatory, Ms. Brown maintained that "all her supervisors are male and that they hire males and generally treat males better than females," and that "her department has a pattern of hiring younger individuals." *Id*. at 14. She also alleged that she had applied for other positions in the past but was not hired. *Id*.

---

[6] The agency dismissed a number of Ms. Brown's discrete discrimination claims on procedural grounds. Ms. Brown's claim involving her 2010 performance rating was dismissed because that claim had already been included in her third EEO complaint. ECF 58-2 at 6. The agency also dismissed as untimely several of Ms. Brown's claims involving discrete acts of discrimination that occurred more than 45 days prior to her initial contact with an EEO officer on June 27, 2014. *Id.* at 6–7.

On August 22, 2017, the VA issued its Final Agency Decision as to Ms. Brown's fourth EEO complaint, concluding that she had not established a discriminatory motive as to either her discrete discrimination claims or her hostile work environment claim. *Id*. at 15, 16. That decision informed Ms. Brown that she had ninety days to file a complaint in court. *Id*. at 17. By that point, however, Ms. Brown had already amended her complaint in this case to include some of the allegations from her fourth complaint. *See* ECF 15 ¶¶ 65–76. Defendant does not object to those allegations on grounds that they were not exhausted when the Amended Complaint was filed, ECF 58 at 10 n.2, and so the Court will assume those allegations are timely for purposes of this Opinion.

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss under Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true, and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That said, a court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Nor must a court accept "legal conclusions cast in the form of factual allegations." *Id*.

In ruling on a 12(b)(6) motion, a court "may consider [] the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice," including records from court and administrative proceedings. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Documents incorporated into the complaint include "documents upon which the plaintiff's complaint

necessarily relies even if the document is produced . . . by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

### B. Motion for Judgment on the Pleadings under Rules 12(h)(2)(B) and 12(c)

Rule 12(h)(2)(B) provides that a defendant may seek dismissal for failure to state a claim upon which relief can be granted after the pleadings are closed through a motion for judgment on the pleadings under Rule 12(c). When the Rule 12(c) procedural device is used to seek dismissal for a failure to state a claim, "[t]he standard for reviewing a motion for judgment on the pleadings is virtually identical to that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Jones v. Castro*, 168 F. Supp. 3d 169, 177 (D.D.C. 2016); *accord Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). Therefore, in considering a motion for judgment on the pleadings under rules 12(h)(2)(B) and 12(c), "the Court should accept as true the allegations in the opponent's pleadings and accord the benefit of all reasonable inferences to the non-moving party." *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002).

### C. Exhaustion and timeliness

Under Title VII, the ADA, the Rehabilitation Act, and the ADEA, a plaintiff must timely exhaust their administrative remedies before filing suit in court. 42 U.S.C. § 2000e-16(c) (requiring exhaustion under Title VII procedures); 42 U.S.C. § 12117(a) (ADA); 29 U.S.C. § 794a(a)(1) (Rehabilitation Act); 29 U.S.C. § 626(d) (ADEA). To begin that process, and prior to filing a formal written complaint, an employee must "initiate contact" with an EEO counselor about the alleged violation within forty-five days of its occurrence. 29 C.F.R. § 1614.105(a)(1); *see also Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007).

Once a final administrative decision is received, a plaintiff may file a civil action challenging that decision within ninety days. 42 U.S.C. § 2000e-16(c). Although the ninety-day filing requirement is applied "strictly," *Ruiz v. Vilsack*, 763 F. Supp. 2d 168, 173 (D.D.C. 2011),

it "is not a jurisdictional prerequisite to suit in federal court." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Rather, it is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* Equitable tolling "applies most commonly when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." *Chung v. Dep't of Just.*, 333 F.3d 273, 278 (D.C. Cir. 2003). A party "is entitled to equitable tolling only if she shows (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way and prevented timely filing." *Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013).

## III.   ANALYSIS

The Court will consider each of Ms. Brown's claims in turn. First, the Court dismisses Ms. Brown's claims under the No Fear Act because that statute does not provide a private right of action. The Court then turns to the claims that stem from Ms. Brown's first and second EEO complaints, dismissing those claims of discrimination and hostile work environment based on race, sex, age, disability, and reprisal (including claims that stem from her first nonselection) because they were not timely filed. The Court next considers the claims that stem from Ms. Brown's third EEO complaint, dismissing those claims of discrimination and hostile work environment based on race, sex, age, disability, and reprisal (including claims that stem from her second nonselection) because Ms. Brown is estopped from pursuing any claims arising from her third EEO complaint due to representations she made during her 2012 bankruptcy case. Finally, the Court considers the claims that stem from Ms. Brown's fourth EEO complaint. The Court dismisses Ms. Brown's retaliation and hostile work environment claims for failure to state a claim. However, the Court stops short of dismissing all of Ms. Brown's claims. Specifically, the Court denies Defendant's Motion to Dismiss regarding Ms. Brown's claim that Defendant intentionally discriminated

against her on the basis of age and sex when it allegedly reassigned her fleet management duties to a younger, male analyst in May 2014.

**A. Ms. Brown's claims under the No Fear Act are dismissed because that statute does not provide a private right of action.**

Ms. Brown pleads a violation of the Notification of Federal Employees Antidiscrimination and Retaliation Act, 5 U.S.C. § 2301 *et seq.*, ECF 15 at 1. But "of the few courts that have considered claims made under the No Fear Act, none have found that the Act provides a private cause of action or creates a substantive right for which the government must pay damages." *Beaulieu v. Barr*, No. 15-cv-896 (TJK), 2019 WL 5579968, at *6 (D.D.C. Oct. 29, 2019) (quoting *Williams v. Spencer*, 883 F. Supp. 2d 165, 182 (D.D.C. 2012)); *see also Glaude v. United States*, 248 F. App'x 175, 177 (Fed. Cir. 2007) (unpublished). The Court agrees with those opinions and therefore dismisses Ms. Brown's claims under that statute for failure to state a claim.

**B. Ms. Brown's claims based on her first and second EEO complaints are dismissed as untimely.**

The Court dismisses Ms. Brown's claims of discrimination, retaliation, and hostile work environment that stem from her first and second EEO complaints (including claims based on her first non-selection) because they were not timely filed. Ms. Brown did not successfully file a civil complaint until more than two years after the final decisions on her first and second EEO complaints. The Court acknowledges that Ms. Brown *attempted* to file what may have been a timely complaint regarding the allegations in her first EEO claim; however, that would-be complaint was returned to her unfiled because it did not include a filing fee or a proper application for *in forma pauperis* status. If Ms. Brown had resubmitted her complaint with reasonable promptness, the Court would likely find that the complaint was timely, and the relevant claims decided on the merits. *See Adams v. Dep't of the Navy*, No. 17-cv-1618 (RDM), 2020 WL2308581 at *4 (D.D.C. May 8, 2020) (construing the date when the complaint and *in forma pauperis*

application were filed as the date the complaint was initiated when plaintiff paid the filing fee within two weeks). But Ms. Brown tarried more than *two-and-a-half years* after the return of her first complaint before she filed this lawsuit. That is too long. Even if the Court were to accept all of Ms. Brown's factual assertions regarding her failed efforts to file her complaint, she describes no "extraordinary circumstance" that would come close to supporting a decision to toll that much time. *Dyson*, 710 F.3d at 421. Accordingly, the Court dismisses as untimely all of Ms. Brown's claims stemming from her first and second EEO complaints, including her first nonselection claim.

### C. Ms. Brown is estopped from pursuing any claims described by her third EEO complaint, and those claims are therefore dismissed.

The Court dismisses Ms. Brown's claims of discrimination, retaliation, and hostile work environment that stem from her third EEO complaint because they are estopped. "Judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous proceeding." *Davis v. District of Columbia*, 925 F.3d 1240, 1255 (D.C. Cir. 2019). "In a bankruptcy petition, a debtor must disclose all potential claims." *Id.* "This means that a debtor is under a duty both to disclose the existence of pending lawsuits when [she] files a petition in bankruptcy and to amend [her] petition if circumstances change during the course of the bankruptcy." *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 793 (D.C. Cir. 2010). That duty "extends to administrative complaints, including those before the EEOC." *Davis*, 925 F.3d at 1255. Thus, "[i]f a plaintiff-debtor omits a pending (or soon-to-be-filed)" administrative complaint "from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Robinson v. District of Columbia*, 10 F. Supp. 3d 181, 185 (D.D.C. 2014); *see also id.* at 190 (dismissing a Title VII claim where plaintiff had failed to disclose pending EEOC complaints during bankruptcy proceedings).

Ms. Brown did not disclose the existence of her pending discrimination claims at any point during the bankruptcy proceedings involving her 2012 petition. *See generally* Bankr. Petition 12-bk-221 (D.D.C.). The various documents that are incorporated into Ms. Brown's Amended Complaint further establish that her discrimination claims were "live" at all times during that bankruptcy case, either because they were still before the agency, were eligible to file in this Court, or had already been filed and constituted a live civil case. In sum, Ms. Brown had a responsibility to disclose the existence of those claims to her debtors.

Ms. Brown makes two arguments that her claims should not be estopped. First, she represents that she told her lawyer in the bankruptcy case about her pending discrimination claims. ECF 63 at 1. But even if the Court accepts that as true, it makes no difference. Ms. Brown signed her petition and was therefore ultimately responsible for its content. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation."). Second, Ms. Brown argues that her claims should not be estopped because she disclosed her pending discrimination claims in separate bankruptcy proceedings based on a new petition she filed in 2018 (several years after her 2015 discharge). *See* ECF 65-1 at 2 (Statement of Financial Affairs from Bankr. Petition 18-bk-383 (D.D.C.)). But those were entirely different proceedings. Ms. Brown's belated disclosure did nothing to alter the fact that her position in this case is inconsistent with the representations she made in the 2012 bankruptcy proceedings, or that the creditors in those proceedings were not informed of a potential asset prior to the discharge of her debts. Accordingly, the Court concludes that Ms. Brown is estopped from pursuing those claims here, including her second nonselection claim.

**D. Ms. Brown successfully states one claim stemming from the charges in her fourth EEO complaint—intentional discrimination based on the reassignment of her fleet management duties.**

Finally, Ms. Brown makes several claims of discrimination and hostile work environment because of her age, sex, and reprisal,[7] based on the events encompassed by her fourth EEO complaint. The Court first considers Ms. Brown's discrete claims, then her claim for hostile work environment. In the end, the Court dismisses Ms. Brown's retaliation and hostile work environment claims, together with the bulk of her discrete discrimination claims. However, the Court concludes that Ms. Brown's claim for intentional discrimination based on the reassignment of her fleet management duties to a younger, male analyst in May 2014 can proceed.

    *1. Discrete claims*

The Court dismisses the majority of Ms. Brown's claims of discrete discrimination on procedural grounds. First, the Court finds that Ms. Brown is estopped from pursuing the claim based on her 2010 performance rating because that claim was included in her third EEO complaint. *See* ECF 58-2 at 6. Next, the Court agrees with the agency's decision to dismiss as untimely Ms. Brown's various claims involving discrete acts that occurred more than 45 days prior to her initial contact with an EEO officer on June 27, 2014. *See id*. at 6–7; 29 C.F.R. § 1614.105(a)(1). Third, the Court notes that Ms. Brown's Amended Complaint appears to make two allegations that were not considered at the administrative level. The first is that Ms. Brown applied and was wrongly rejected for the position of Supervisory Program Analyst for a third time in August 2013. *See* ECF 15 ¶ 13. The second is that all her personal belongings were removed from her office while she was on furlough in late 2013. *See id*. at ¶¶ 67–68. Those claims were not exhausted at the administrative level and are therefore dismissed. *See* 42 U.S.C. § 2000e-16(c) (Title VII); 29

_____

[7] Ms. Brown's fourth EEO complaint does not allege discrimination because of her race or disability.

U.S.C. § 626(d) (ADEA). Moreover, the date Ms. Brown became aware that her belongings were removed from her office, in January 2014, was more than 45 days before Ms. Brown initiated contact with an EEO officer in June 2014, and therefore would not be timely exhausted in any event. *See* 29 C.F.R. § 1614.105(a)(1). Finally, the Court observes that Ms. Brown makes no allegations in her Amended Complaint regarding her one-day suspension, and therefore assumes that she has abandoned that claim. *See generally* ECF 15.

As for Ms. Brown's claim about the reassignment of her fleet management duties, the Court concludes that she has pled sufficient facts to support an inference of intentional discrimination based on her age and sex. Ms. Brown's complaint incorporates the allegation that her duties were reassigned to a younger, male analyst. *See* ECF 58-2 at 7 (Final Agency Decision). That allegation, combined with the allegation that the VA has a pattern of treating male employees better than female employees and hiring younger individuals over older ones, *see id.* at 14, and many of the incidents of alleged age and sex discrimination described by Ms. Brown in her various administrative complaints,[8] is sufficient to state a claim of intentional discrimination based on age and sex—particularly considering Ms. Brown's pro se status.

The Court does not find, however, that Ms. Brown has stated a claim for discrimination based on retaliation. That is because she makes no allegations to support a causal link—temporal or otherwise—between any particular protected activity and the decision of her supervisor-at-the-time to reassign her fleet management duties. Her retaliation claims are dismissed.

---

[8] Although the Court has dismissed Ms. Brown's claims based on the incidents alleged in her first three EEO complaints, *see supra*, those allegations may still be relevant to show discriminatory animus.

2. *Hostile work environment*

A hostile work environment typically "consists of several individual acts that may not be actionable on their own but become actionable due to their cumulative effect."[9] *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015). Those acts must be "adequately linked such that they form a coherent . . . claim." *Id*. For example, the alleged incidents might "involve the same type of employment actions, occur relatively frequently, and be perpetrated by the same managers." *Id*. Because subjecting an employee to a hostile work environment is an ongoing violation, the Court may consider incidents that would not be timely if alleged as standalone acts of discrimination, so long as they are part of the same pattern of discrimination as at least one incident that falls within the statutory time period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002).

To prevail on a hostile work environment claim, a plaintiff must show that "she was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014). That requirement includes both a subjective and objective element. In other words, even if an employee subjectively views her environment as abusive, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Under that standard, neither the "ordinary tribulations of the workplace" nor "petty insults, vindictive behavior, and angry recriminations" are sufficient. *Brooks*, 748 F.3d at 1277–78. This

_____

[9] It does not appear that either the Supreme Court or the D.C. Circuit have decided whether a hostile work environment claim can be brought under the ADEA. *See Shah v. Broad. Bd. of Governors*, No. 18-cv-1328 (RDM), 2020 WL 6342947, at *11 (D.D.C. Oct. 29, 2020). Because Ms. Brown's hostile work environment claim fails either way, the Court assumes (without deciding) that it can.

analysis requires the Court to look "at all the circumstances, including the frequency of the [alleged] discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007).

Although it is clear from her allegations that Ms. Brown had an acrimonious relationship with several of her supervisors—perhaps through no fault of her own—the Court concludes that her allegations, even considered in the aggregate, do not constitute a pattern of "discriminatory intimidation, ridicule, or insult" that would support a hostile work environment claim. *Brooks*, 748 F.3d at 1276. Although the Court does not doubt that Ms. Brown felt discriminated against when her supervisors denied her leave requests, *see* ECF 15 ¶¶ 31, 45, 49, 58, 61, imposed unreasonable deadlines, *see id.* ¶¶ 25, 32, 71, gave her worse-than-expected performance reviews, *see id.* ¶¶ 55, 74, or even admonished her for unfairly perceived lapses in performance, *see id.* ¶¶ 39, 46, those types of "work-related actions by supervisors" do not normally constitute an objectively hostile work environment under Title VII (or the ADEA). *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *see also Harris v. Mayorkas*, No. 21-cv-1083 (GMH), 2022 WL 3452316, at *16 (D.D.C. Aug. 18, 2022). Similarly, the several incidents in which Ms. Brown alleges she was treated disrespectfully, sometimes in front of colleagues, *see* ECF 15 ¶¶ 33, 41, 43, are at most the kind of "petty insults, vindictive behavior," and/or "angry recriminations" that courts have routinely held insufficient to sustain a hostile work environment claim. *Brooks*, 748 F.3d at 1277–78; *see also Dieng v. Am. Insts. for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 14 (D.D.C. 2019) (dismissing hostile work environment claims based on "denial of teleworking," "yelling at [plaintiff] during staff meetings," "ignoring [plaintiff] at those meetings," and "constant questioning of [plaintiff's] work"); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48,

54–57 (D.D.C. 2004) (dismissing hostile work environment claims based on allegations that plaintiff's employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in one instance, and was "constantly hostile and hypercritical").

In short, the Court concludes that Ms. Brown's hostile work environment allegations—which occurred on-and-off over the course of years, at the hands of multiple supervisors—fall short of establishing a pattern of conduct that was sufficiently "severe or pervasive to alter the conditions of her employment." *Brooks*, 748 F.3d at 1276. Though many of Ms. Brown's allegations involving the behavior of her supervisors and coworkers may be probative to establish a pattern of discrimination, which would in turn be relevant to her disparate treatment claim, they do not clear the legal bar to successfully plead a hostile work environment claim.

## IV.    CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss, ECF 21, and Defendant's Motion for Judgment on the Pleadings, ECF 57, as to all Plaintiff's claims except the claim that Defendant intentionally discriminated against her on the basis of age and sex when it reassigned her fleet management duties to a younger, male analyst in May 2014.

**SO ORDERED.**

DATE: May 25, 2023

_____
Jia M. Cobb
U.S. District Court Judge