UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GAYLE D. BROWN

                Plaintiff,

   v.

TODD HUNTER,
Acting Secretary of Veterans Affairs,

                Defendant.

Case No. 14-cv-1457 (JMC)

**MEMORANDUM OPINION**

Defendant Todd Hunter, in his official capacity as Acting Secretary of the United States Department of Veterans Affairs,[1] moves to dismiss pro se Plaintiff Gayle Brown's lawsuit as a sanction for her failure to comply with the Court's orders.[2] ECF 91. Moments after this Court directed Plaintiff to answer the questions defense counsel posed to her at her deposition, Plaintiff continued to refuse to answer the questions, told defense counsel "I don't care what Judge Cobb says; I really don't," ECF 91-3 at 45:17–18, and abruptly left her deposition, *id.* at 48:18. Unfortunately, this is the third time that the Court has been called upon to resolve an issue concerning Plaintiff's failure to cooperate with her deposition. The Court has provided clear directives to Plaintiff, resisted imposing monetary sanctions, and warned her that failure to follow orders may result in the dismissal of her case. Because Plaintiff has made it clear that she "do[es]n't care" what this Court orders, *id.* at 45:17–18, the Court finds that any further orders requiring her

---

[1] At the time the instant motion to dismiss was filed, Denis McDonough served as Secretary of the Department of Veterans Affairs. Pursuant to Fed. R. Civ. P. 25(d), however, when a public officer sued in his official capacity ceases to hold office while an action is pending, "[t]he officer's successor is automatically substituted as a party."

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

to cooperate with her deposition will be futile. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's case with prejudice.

I.     BACKGROUND

This is a discrimination case that Plaintiff filed against her employer, the Department of Veterans Affairs. *See* ECF 15. Plaintiff represents herself pro se. This case has a long history that predates the Court's involvement in the matter. In May 2023, after a stay of litigation and an unsuccessful mediation attempt, this Court granted in part and denied in part Defendant's motion for judgment on the pleadings. ECF 69. Discovery opened on September 14, 2023, and was initially set to close on February 14, 2024. ECF 77. During the litigation, the Court has resolved various discovery disputes regarding Plaintiff's deficient responses to Defendant's discovery requests and extended case deadlines to allow the Parties to complete discovery. *See, e.g.*, Oct. 23, 2023 Minute Order; Feb. 14, 2024 Minute Order; May 8, 2024 Minute Entry; July 3, 2024 Minute Entry; July 8, 2024 Minute Entry; Sept. 4, 2024 Minute Order.

Most relevant here are the Parties' disputes, and the Court's rulings, concerning Plaintiff's deposition. The first deposition dispute the Court addressed occurred in August 2024. On August 30, 2024, Defendant filed a joint motion requesting a telephone conference. ECF 89. At that point, discovery was set to close on September 2, 2024. *See* July 8, 2024 Minute Order. Defendant sent Plaintiff a notice to appear on August 28, 2024 for a video deposition. ECF 89-2 at 2. According to Defendant, Plaintiff refused to appear for her deposition by video as indicated in the deposition notice, and instead called into the deposition by telephone. ECF 89 at 2. After a back and forth, Defendant claimed that Plaintiff hung up the phone on defense counsel as she was speaking (thus terminating the deposition) and did not respond to subsequent emails attempting to

reschedule the deposition. *Id.*³ In addition to asking the Court to compel Plaintiff to appear for her deposition, Defendant asked to extend the deadline to complete discovery and requested that the Court order Plaintiff to reimburse the defense for the costs associated with the deposition that had not gone forward. ECF 89 at 3–4, 8. In the joint motion, Plaintiff acknowledged that she called into the deposition by telephone and claimed that she did not have access to video conferencing. *Id.* at 7. She further represented that she told defense counsel about health issues that she was experiencing because of her employer's treatment of her and argued that the deposition should have been canceled. *Id.* She denied hanging up on defense counsel, but acknowledged that she disconnected from the call after defense counsel told her that the deposition could not go forward unless Plaintiff appeared by video. *Id.*

The Court addressed the joint motion by order. The Court extended discovery until October 11, 2024. Sept. 4, 2024 Minute Order. The Court also ordered that Defendant contact Plaintiff by a date certain to propose dates for her deposition, that Plaintiff respond with her availability by a set deadline, that Plaintiff attend her deposition in-person, and that Plaintiff produce the outstanding discovery the Court previously ordered her to turn over. *Id.* The Court declined to order monetary sanctions, but warned that Plaintiff's failure to comply with the Court's order, which included that she attend her deposition in-person, could result in the dismissal of her case. *Id.*

---

³ Defendant's motion references other examples of Plaintiff's failure to comply with her discovery obligations. ECF 89 at 2–3. It is true that the Court has been required to compel Plaintiff to respond to Defendant's interrogatories, provide interrogatory verifications, and produce documents as requested. *See, e.g.*, May 8, 2024 Minute Entry; July 8, 2024 Minute Order; Sept. 4, 2024 Minute Order. It is not clear to the Court whether Plaintiff has complied with the Court's prior orders to compel. After reviewing the email correspondence between the Parties concerning Plaintiff's deficient responses, the Court believes that some of Plaintiff's prior conduct in discovery may be attributable to the fact that she is pro se. But it is also clear to the Court that Plaintiff has been purposefully difficult to obstruct Defendant's ability to obtain information from her—including after the Court required her to provide responses. *See, e.g.*, ECF 84-6 at 6; ECF 86-1 at 3–4; ECF 89-4 at 3–4. This opinion focuses largely on Plaintiff's conduct related to her deposition, but the Court acknowledges that Plaintiff has not been a cooperative litigant in discovery generally.

The second time the Court had to resolve an issue concerning Plaintiff's cooperation with her deposition occurred on the day of the scheduled deposition, October 4, 2024. ECF 91 at 3. Plaintiff showed up to the deposition in-person, but was almost immediately uncooperative. According to the deposition transcript, she refused to answer basic (and innocuous) background questions. For example, when defense counsel asked her to confirm whether she lived at a certain address, Plaintiff responded "I would like to defer to that question and answer it later." ECF 91-3 at 11:23–25. She gave the same response when asked to confirm her telephone number and provide the address where she lived at the time of the events at issue in this lawsuit. *Id.* at 13:6–14:8. And when defense counsel asked Plaintiff for her current address, she told defense counsel that she had "rights" and that "[t]his isn't slavery." *Id.* at 12:13–16. She laughed in response to defense counsel's efforts to confirm why she was refusing to answer questions. *Id.* at 10:9–11. When asked when she would answer her deposition questions, Plaintiff responded: "when I choose to." *Id.* at 11:1–2. She refused to answer questions about her son, even though she alleges that Defendant's conduct impacted her relationship with her son and seeks money damages for that injury. *Id.* at 42:15–23.

Because Plaintiff refused to answer counsel's questions, defense counsel contacted the Court, by telephone, during the deposition and while Plaintiff was present. The Court conducted a hearing, transcribed by the court reporter taking the deposition. *See id.* at 39:11–43:17. After hearing from the Parties, the Court ordered Plaintiff to answer defense counsel's questions. Specifically, the Court told Plaintiff that she needed to "answer the questions that are posed to you" and that she needed to do so "at the time they're posed to you." *Id.* at 43:8–11. After the Court ordered Plaintiff to answer defense counsel's questions and concluded the hearing with the

4

Parties, defense counsel attempted to revisit some of the questions that Plaintiff previously refused to answer. The deposition transcript reveals the following exchange:

> Defense Counsel: Okay, I'd like to go back to those questions that I asked earlier. And we just had a conversation with the judge about answering those questions, so let's just go—
>
> Plaintiff: Oh, yeah that's really good. And guess what—
>
> Defense Counsel: Let's go over those.
>
> Plaintiff: Guess what?
>
> Defense Counsel: So Ms. Brown—
>
> Plaintiff: I'm going to look at you in your eyes.
>
> Defense Counsel: Okay.
>
> Plaintiff: And I'm going to tell you this—*and make sure you get this on the record. I don't care what Judge Cobb says; I really don't. . . .*

*Id.* at 45:5–18 (emphasis added). Plaintiff went on to talk about how long she has been dealing with her employer's conduct (not in response to any question), as defense counsel attempted to interrupt so that she could ask a question. *Id.* at 45:21–46:19. Plaintiff again represented that she did not care about this Court's orders:

> Defense Counsel: You interrupted me and you said, "Well, let me tell you this. I don't care what Ms."—"Judge Cobb said." That's what you said.
>
> Plaintiff: *I really don't, because we—*
>
> Defense Counsel: Okay. Let me ask a question.
>
> Plaintiff: *Guess what, because there are appeal rights.*

*Id.* at 47:1–7 (emphasis added). Plaintiff then refused to continue her deposition, got up from her seat, and abruptly left. The court reporter transcribed the exchange between the Parties before Plaintiff terminated her deposition:

> Plaintiff: —Judge Cobb and anyone else that conspires—conspiring against this whole thing whoever's doing what—
>
> Defense Counsel: Let's move forward, Ms.—
>
> Plaintiff: —ever—we don't have to move forward.
>
> Defense Counsel: —Brown.
>
> Plaintiff: *Because guess what, this is being ended*, because guess—like I told you earlier, I'm not a slave. It's not 400 years ago.
>
> Defense Counsel: So—
>
> Plaintiff: I have rights.
>
> Defense Counsel: So your position is that you are ending—
>
> Plaintiff: I'm not a slave.
>
> Defense Counsel: —the deposition today?
>
> Plaintiff: I'm not a slave. *I don't care what Judge Cobb says.* Judge Cobb can be bought like everyone else. Now, what you all should have focused on was Ketanji Brown because—
>
> Defense Counsel: Ms.—
>
> Plaintiff: —guess what, Ketanji Brown was the one that accepted 111 of my claims, and you all dismissed all of them but one.
>
> Defense Counsel: Would you please take a seat so we can complete—
>
> Plaintiff: Have a nice day.
>
> Defense Counsel: Are you leaving the—

> Plaintiff: I'm not a slave.
>
> Defense Counsel: —the deposition? Let me just ask—
>
> Plaintiff: Get that. I'm not a slave.
>
> Defense Counsel: Wait a second. Are you leaving the deposition?
>
> Plaintiff: Get that. I'm not a slave.
>
> (The witness left the proceedings).

*Id.* at 47:11–48:18 (emphasis added).

After Plaintiff left the deposition, Defendant filed the instant motion, which makes this the third time the Court has been asked to resolve a dispute concerning Plaintiff's deposition conduct. ECF 91. Defendant moves the Court to dismiss this action with prejudice pursuant to Rule 41(b) because of Plaintiff's refusal to comply with this Court's orders and for failure to prosecute. *Id.* at 8–12. Plaintiff opposes. ECF 92. She contends that she appeared for her deposition and that it was reasonable for her to refuse to answer defense counsel's questions until some later, unspecified time because she was "aggravated" by them. *Id.* at 1. And although she does not expressly deny making the statements the deposition transcript attributes to her, she suggests, with no supporting evidence, that the transcript of her deposition may be "fraudulent." *Id.* at 2. The Court finds that Plaintiff's baseless suggestion that a court reporter may have fabricated the Parties' exchange at the deposition, and that defense counsel perhaps submitted a doctored transcript to the Court, to be frivolous and strikes it from her response. Accordingly, the Court considers the entire record before it, including the transcript of Plaintiff's October 4, 2024 deposition, in resolving Defendant's motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 41(b) provides for the involuntary dismissal of an action for failure "to prosecute or to comply with . . . a court order." Dismissal is a severe consequence that cannot be doled out lightly. "A District Court may dismiss under Rule 41(b) only after less dire alternatives have been explored without success." *Gardner v. United States*, 211 F.3d 1305, 1308 (D.C. Cir. 2000) (internal citations and quotations omitted). The D.C. Circuit has recognized three, limited circumstances under which a district court may dismiss an action for a party's misconduct: "(1) prejudice to the other party; (2) failure of alternative sanctions to mitigate the severe burden the misconduct has placed on the judicial system; and (3) deterrence of future misconduct." *Id.* at 1309 (citing *Shea v. Donohoe Constr. Co*, 795 F.2d 1071, 1074 (D.C. Cir. 1986)). The deterrence rationale "justifies dismissals when there is some indication that the client or attorney consciously fails to comply with a court order cognizant of the drastic ramifications." *Id.*

## III. ANALYSIS

The record establishes that Plaintiff purposefully disregarded this Court's orders requiring her to be deposed. The Court has considered that Plaintiff is pro se and has thought hard about other sanctions that could motivate Plaintiff's compliance and get this case back on track. But the Court finds that dismissal is the only appropriate consequence for Plaintiff's significant misconduct, which includes repeatedly proclaiming that she does not care about this Court's orders. Here, dismissal is necessary for deterrence, although there are other factors justifying dismissal as well, which are described below.

First, Plaintiff has repeatedly refused to cooperate with her deposition (and discovery generally). Defendant noticed her deposition for August 28, 2024 by Zoom. ECF 89-2. Plaintiff

called defense counsel by telephone the morning of her scheduled deposition and claimed that she could not appear by video because the phone that she was using "doesn't have the Zoom app." ECF 92 at 1. (But the Court recalls that Plaintiff has previously appeared by video for Zoom court hearings.) The Parties dispute whether Plaintiff hung up on defense counsel or not, but agree that the call ended shortly after it began and that Plaintiff was not deposed that day. *See* ECF 89-3 at 4; ECF 92 at 1. Defendant represented that Plaintiff did not respond to its follow-up email attempting to reschedule the deposition, ECF 89 at 2; ECF 89-1, and Plaintiff has not argued (nor does the record suggest) otherwise. Defendant moved for an order compelling Plaintiff to sit for a deposition, respond to outstanding discovery that the Court previously ordered she provide, and for the costs associated with the deposition that did not go forward. ECF 89. Giving Plaintiff the benefit of the doubt because she is proceeding pro se, the Court declined to impose monetary sanctions. Sept. 4, 2024 Minute Order. However, the Court made clear to Plaintiff that she was required to appear for her deposition (in-person) and ordered her to cooperate in scheduling her deposition by setting deadlines by which she had to respond to defense counsel, among other discovery orders. *Id.*

Plaintiff showed up for the next scheduled deposition, but did not allow defense counsel to depose her. Instead, she played games with defense counsel by being purposefully evasive and offering glib responses. She responded to basic background questions like, "what is your address," with "I would like to defer to that question later." ECF 91-3 at 11:23–25. Indeed, she answered almost every question that way. When defense counsel asked Plaintiff when she planned to answer the questions posed, she responded "[w]hen I choose to." *Id.* at 11:1–2. Sometimes, she laughed at defense counsel's questioning, *see, e.g., id.* at 10:9–11, or said nothing at all in response to a question, *see, e.g., id.* at 11:13–15. Plaintiff's conduct required defense counsel to suspend the

9

deposition and seek this Court's intervention. But after the Court ordered Plaintiff to respond and the deposition resumed, Plaintiff immediately argued with defense counsel, refused to comply with the Court's directives, and abruptly left the deposition. *Id.* at 43:19–49:8. This is far from a one-time mistake: Plaintiff has consistently obstructed Defendant's ability to ask her questions at a deposition—over more than one day, after breaks and court intervention, and in response to almost every question posed to her.

Second, the Court warned Plaintiff that her case could be dismissed if she did not appear for her deposition. After Plaintiff did not sit for the first scheduled video deposition or comply with the Court's prior orders to produce certain discovery, the Court issued an order requiring Plaintiff to make herself available for Defendant to depose her. *See* Sept. 4, 2024 Minute Order. The Court's order informed Plaintiff that if she "fails to comply with the terms of this Court's order, including by failing to appear in-person for the deposition . . . she risks sanctions, including dismissal of her claims for want of prosecution." *Id.* And pro se or not, the Court has *no doubt* that Plaintiff understood that an order "to appear" for her deposition meant that she must allow herself to be deposed—not just show up and storm out after refusing to answer basic questions. Plaintiff's statements on the record make clear that she understood her case could be dismissed if she left the deposition prematurely. Right before announcing that she was not going forward with the deposition, Plaintiff told defense counsel that she did not care about this Court's order because "there are appeal rights." ECF 91-3 at 47:1–7. From the record before the Court and the context in which Plaintiff made her statements, the Court easily concludes that Plaintiff's reference to her "appeal rights" was an acknowledgment that this Court might dismiss her case, but that a dismissal would not matter to her because she could pursue review of that dismissal before a higher court.

So, Plaintiff was fully aware that dismissal was a consequence for her misconduct, but was undeterred.

Along those same lines, Plaintiff's refusal to comply with the Court's orders concerning her deposition was willful and in bad faith. There is no chance that her behavior was the result of any mistake or confusion, or because she is a pro se litigant. The Court has observed and interacted with Plaintiff many times during this litigation and knows that she is a smart woman who understands the consequences of her words and actions. And this Court's order that Plaintiff "answer the questions that are posed to you . . . at the time they're posed to you" was crystal clear. *Id.* at 43:8–11. It is hard for the Court to imagine a more purposeful (and frankly disrespectful) disregard of a Court's order than a party announcing: "I don't care what Judge Cobb says, I really don't," *id.* at 45:17–18—as an explanation for her conduct. *See Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001) (recognizing that dismissal is an appropriate sanction to deter conduct that is "disrespectful to the Court") (internal quotations and citations omitted). Plaintiff exclaimed that she did not care about this Court's orders three times, as defense counsel pleaded with her to continue with questioning. ECF 91-3 at 45:5–48:18. She even told the court reporter to "make sure you get this on the record" before announcing her defiance. *Id.* at 45:16–17. Plaintiff wanted the Court to know that she was refusing to comply with its directive. She also knew that Defendant had incurred costs in arranging her deposition (given that Defendant had previously asked that this Court order her to pay those costs) and still left.

Plaintiff offers no explanation or apology for her conduct in her response to Defendant's motion to dismiss. To the contrary, she doubles down, insisting that her behavior was somehow justified and blaming defense counsel for purportedly "imped[ing]" the deposition by asking her questions she deemed irrelevant. ECF 92 at 1–2. She cannot dispute that she left her deposition

11

and does not expressly deny that she disregarded the Court's orders because she "do[es]n't care" about them. ECF 91-3 at 45:17–18. Instead, Plaintiff makes the ridiculous suggestion that the court reporter's transcript of her deposition may be fraudulent, which hurts her credibility. ECF 92 at 2. In short, Plaintiff's own words make clear that her failure to comply with this Court's order was purposeful, deliberate, and willful, and not the result of any mistake or miscommunication. *See, e.g.*, *Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 151, 155 (D.D.C. 2003) (finding that conduct that "intentionally circumvented a court order" justified sanction of dismissal).

Finally, dismissal is the only appropriate sanction here. The Court has considered whether there are consequences short of dismissal that could remedy the prejudice to Defendant Plaintiff's conduct caused. Defendant has incurred costs for two depositions that have not gone forward. Plaintiff's responses to written discovery have been sporadic and not particularly fulsome, so the Court appreciates that Defendant needs to depose Plaintiff, face-to-face[4], to understand the contours of her claims against it. In other words, Defendant cannot move forward in this litigation without deposing Plaintiff. On the other hand, dismissal is a severe sanction. The Court much prefers to resolve cases on their merits—particularly civil rights cases involving allegations of discrimination. The Court considered a range of possible sanctions that would allow this case to move forward: should the Court again admonish Plaintiff and order her to appear for her deposition a third time?; or perhaps order Plaintiff to pay the costs associated with the deposition and appear again?; or maybe order her to pay the costs both for the last deposition and the next one? Any sanction that this Court can think of, however, would depend upon Plaintiff not only cooperating with a continued deposition but complying with the Court's sanction order. But Plaintiff has made

---

[4] In her response, Plaintiff requests that her deposition be conducted by written questions. *See* ECF 92 at 2. The Court will not entertain that request. Defendant sought an in-person deposition of Plaintiff, which is the default and what the Court ordered in this case.

clear that she does not care about the Court's orders and offers no remorse for defying them. Her statements make clear that she will continue to pick and choose which of the Court's directives she wants to follow, and that she does not want defense counsel to obtain certain information from her. She might show up for a third deposition, but would likely be just as difficult. Nor does the Court think that she would even comply with an order to pay costs; again, Plaintiff does not care about this Court's orders (her words, not mine). Unfortunately, the Court has lost confidence in its ability to manage this litigation over a party that does not respect its authority. And the severity of Plaintiff's conduct—willfully defying a court order—calls for a significant sanction for deterrence.

\* \* \*

Plaintiff flagrantly and purposefully defied orders of this Court requiring her to be deposed, even after the Court warned her that her case could be dismissed. Her conduct in refusing to answer questions and storming out of her deposition was egregious. The Court does not have an adequate explanation for Plaintiff's behavior. It has been clear to the Court for some time that Plaintiff is not happy with the Court's May 2023 order dismissing some of her claims; her attitude before this Court since that ruling has been far from respectful. But Plaintiff's unhappiness with the Court, her employer, or defense counsel does not excuse her from responding to a deposition notice or complying with the Court's orders. Plaintiff has made clear that she does not care what this Court says or directs and that she wants to exercise her appeal rights. Accordingly, the Court **GRANTS** Defendant's motion, ECF 91, and dismisses Plaintiff's case with prejudice. A separate order, which Plaintiff can appeal, accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: February 3, 2025